FILED

2014 Jul-28  AM 11:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **RHONDA C. CROW,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **3:12-cv-02418-AKK** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Rhonda Crow brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the ALJ's decision is not supported by substantial evidence. Thus, the court will **REVERSE** and **REMAND** the decision denying benefits.

### I. Procedural History

Crow protectively filed her application for Title II disability insurance benefits on June 14, 2009, alleging a disability onset date of January 17, 2009, (R. 68, 130), due to the effects of a fibromyalgia, multiple myalgia, multiple arthralgia,

1

and depression, (R. 141).  After the SSA denied her application on January 27, 2010, (R. 77-81), Crow requested a hearing, (R. 83).  At the time of the hearing on January 14, 2011, Crow was forty-two years old, (R. 34), and had a high school education and had past relevant light, semi-skilled work as a radiology technician, (R. 22).  Crow has not engaged in substantial gainful activity since January 17, 2009, the alleged onset date.  (R. 14).

The ALJ denied Crow's claim on February 24, 2011, (R. 12–23), which became the final decision of the Commissioner when the Appeals Council refused to grant review on May 7, 2012, (R. 1–6). Crow then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383©) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin,* 849 F.2d at 1529 (quoting *Bloodsworth,* 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin,* 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb,* 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological,

or psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.   20

C.F.R. § 404.1520(a)-(f).   Specifically, the Commissioner must determine in

sequence:

> (1)    whether the claimant is currently unemployed;
>
> (2)    whether the claimant has a severe impairment;
>
> (3)    whether the impairment meets or equals one listed by the Secretary;
>
> (4)    whether the claimant is unable to perform his or her past work; and
>
> (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).   "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"   *Id.* at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must

meet additional criteria.   In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart,* 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id.*  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale [v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987) ].

*Elam v. R.R. Ret. Bd.,* 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt,* 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate
> reasons for refusing to credit a claimant's subjective pain testimony,
> then the [ALJ], as a matter of law, has accepted that testimony as true.
> Implicit in this rule is the requirement that such articulation of reasons
> by the [ALJ] be supported by substantial evidence.

*Hale,* 831 F.2d at 1012.   Therefore, if the ALJ either fails to articulate reasons for

refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not

supported by substantial evidence, the court must accept as true the pain testimony

of the plaintiff and render a finding of disability.  *Id.*

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined

that Crow had not engaged in substantial gainful activity since the alleged onset of

her disability, and therefore met Step One.  (R. 14).  Next, the ALJ acknowledged

that Crow's severe impairments of obesity, possible disc protrusion at L1/2-S1

contributing to moderate spinal canal stenosis with mild to moderate impingement

on the anterior conus medullaris, mild degenerative disc disease at L3/4 and at

L4/5. fibromyalgia. bipolar disorder, obsessive compulsive disorder, combined.

depression. and anxiety met Step Two.  *Id.*  The ALJ also noted that Crow had the

non-severe impairment of "cervical fusion fifth right metatarsal fracture and

hypertension."  (R. 15).  The ALJ then proceeded to the next step and found that

Crow did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id.*   Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel,* 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Crow "has the residual functional capacity [RFC] … [to] perform unskilled, sedentary work, she requires the option to sit or stand at will; and she can occasionally interact with supervisors, coworkers and the public." (R. 17).   Based on this assessment of Crow's RFC, the ALJ determined Crow was unable to perform her past relevant work.  (R. 22).  Lastly, in Step Five, the ALJ considered Crow's age, education, work experience, and RFC, and determined, based on the Medical Vocational Guidelines found in 20 C .F.R. Part 404, Subpart P, Appendix 2, and on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that [Crow] can perform." *Id*. Because the ALJ answered Step Five in the negative, he determined that Crow was not disabled.  (R. 23).

## V. Analysis

Crow contends that (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ improperly applied the pain standard; and (3) his decision to discredit the opinions of Crow's treating physicians is not supported by substantial evidence.  Because the court agrees that the ALJ committed reversible

error in his application of the pain standard,  the court will not examine Crow's

first and third contention.

In his application of the pain standard, the ALJ found that Crow's medically

determinable impairments could not reasonably be expected to cause Crow's

alleged symptoms and that Crow's testimony as to the extent of her alleged

limitations was not credible.  (R. 18).  The record, however, does not support either

finding.  In fact, as to the ALJ's initial finding that Crow's medically determinable

impairments could not reasonably be expected to cause her alleged symptoms at

step 3 in the pain standard, a cursory glance at the ALJ's determination of Crow's

severe impairments of "obesity; possible disc protrusion at L1/2-S1 contributing to

moderate spinal canal stenosis with mild to moderate impingement on the anterior

conus medullaris; mild degenerative disc disease at L3/4 and at L4/5; fibromyalgia;

bipolar disorder, obsessive compulsive disorder, combined; depression; and

anxiety," (R. 14), makes it plainly obvious to the court that Crow has met the pain

standard.   Contrary to the ALJ's findings, these conditions, singly and in

combination, could reasonably be expected to cause Crow's alleged disabling pain.

*See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) ("[S]everal determinable

neck and back impairments … could have caused [the claimant's] pain."); *Kelley v.*

*Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia … can be

disabling."); *Jenkins v. Sullivan*, 906 F.2d 107, 109 (4th Cir. 1990) (stating that an

ankle injury and degenerative disc disease could reasonably cause disabling pain); *Hill v. Barnhart*, 440 F. Supp. 2d 1269, 1275 (N.D. Ala. 2006) (holding that herniated discs and degenerative disc disease satisfied the pain standard).  As the Eleventh Circuit has admonished, the Commissioner simply cannot "deny disability claims where medical evidence in the record clearly indicates the existence of a medical impairment which could reasonably be expected to produce disabling pain."  *Hand*, 761 F.2d at 1549 n.6.[2]  Therefore, the ALJ's finding is not supported by substantial evidence.[3]

The ALJ also erred in his evaluation of the credibility of Crow's testimony. The ALJ listed four reasons, none of which are supported by substantial evidence, for finding Crow's alleged symptoms.  First, the ALJ noted that the "medical records fail to document a sufficient objective basis to accept [Crow's] allegations."  (R. 18).  This contention is unavailing because Crow suffers from fibromyalgia, which the Eleventh Circuit has noted "'often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms,' and that the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence.'"  *Hernandez v. Comm'r of Soc. Sec.*, 523 Fed. App'x 655, 657 (11th Cir. 2013) (quoting *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005)).

---

[2] In *Hand*, the court found the pain standard was not met "where the medical evidence is in conflict as to the *existence* of an impairment which could reasonably be expected to produce such pain."  761 F.2d at 1549 n.6 (emphasis added).

[3] The court notes that the Commissioner does not even defend this part of the ALJ's decision, *see generally* Doc. 9, and, instead, relies on the ALJ's evaluation of Crow's testimony, *id*. at 17.

Moreover, "the ALJ cannot discredit [Crow's] testimony as to the intensity or persistence of her pain and fatigue solely based on the lack of objective medical evidence." *Snyder v. Comm'r of Soc. Sec.*, 330 Fed. App'x 843, 848 (11th Cir. 2009) (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), and *Todd v. Heckler,* 736 F.2d 641, 642 (11th Cir. 1984)).   Significantly, because the ALJ's other reasons, discussed below, are not supported by substantial evidence, the lack of objective support cannot provide substantial evidence to discredit Crow's testimony.

Second, the ALJ discredited Crow's testimony because Crow "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."[4]   (R. 18).   Based on this court's review of the record, the ALJ's determination is based on a mischaracterization of Crow's description of her daily activities.   For example, Crow stated that "[s]tanding in one spot chopping, stirring, [and] cooking can set me up for a sleepless night of pain.   Dishes would do that same." (R. 135).   She also alleged that she has to "rest between loads" and "sit to fold, sometimes" when doing laundry," (R. 135), "rarely wipe[s] the dust off things," (R. 135), and only "occasionally" drives, (R. 136).   Critically, Crow's daily activities are not

---

[4] To support this finding, the ALJ lists the following activities: [P]reparing quick meals daily; doing laundry; dusting; washing dishes; sweeping; performing routine hygiene; grooming and dressing activities independently; taking medications independently; feeding and watering pets; squatting and scooping litter; watching television; going out alone; driving independently; shopping in grocery stores; paying bills; counting changing [sic]; and using a checkbook. *Id*. at 18-19.

inconsistent with Crow's allegations of disabling pain because "[i]t is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances."  *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003).  As the Eighth Circuit aptly put it,

> statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.

*Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981).  In short, Crow's daily activities simply do not provide substantial evidence to discredit her allegations of disability.

The third basis the ALJ provided for discrediting Crow's testimony is based on Crow's purported ability to work despite Dr. Darin Bowling's treatment and diagnosis of degenerative disc disease in 2005 which indicated that Crow's "back pain was present at approximately the same level of severity prior to the alleged onset date." (R. 19).  This contention, however, is belied by the record.  While an April 8, 2005 MRI of the lumbar spine revealed the Crow was already suffering from central disc bulging at L5-S1 and degenerative disc disease with diffuse disc bulging at T12-L1, (R. 19, 305), a June 2009 MRI of the lumbar spine revealed a deteriorating condition.  In the 2009 MRI, Dr. Bowling found "moderate spinal

canal stenosis with mild to moderate impingement on the anterior conus medullaris" and opined that Crow's "[m]ild L3-4 and L4-5 spinal canal stenosis has increased in the interval" between the two MRIs. (R. 301). Additionally, after Dr. Bowling's treatment in 2005, Dr. P. Anthony Saway diagnosed Crow with fibromyalgia and degenerative disc disease of the thoracic spine in December 2008. (R. 256). Perhaps relying on this deterioration of Crow's condition, the ALJ also found that Crow's condition(s) had deteriorated when he determined that, as of the alleged onset date, she "is unable to perform any past relevant work." (R. 22). As is evident, the medical evidence and the ALJ's own findings demonstrate that Crow's impairments deteriorated after Dr. Bowling's treatment in 2005. Consequently, Crow's ability to work in 2005 does not provide substantial evidence to discredit her testimony that she suffers from disabling limitations in 2009.

   As the final reason for discrediting Crow's testimony of disabling pain, the ALJ stated that "[t]he fact that [Crow's] treating rheumatologist recommended that she receive primary care treatment in lieu of specialized treatment suggests that the symptoms may not have been as serious as … alleged." (R. 19). Rheumatologist Dr. Saway's recommendation, in pertinent part, is as follows:

> She is doing a little better but *still having significant difficulty*. I think that her primary care physician Dr. Bowling is on the right track in terms of management of her fibromyalgia symptoms. Given *her economic circumstances* [and] *the distances she has to travel* and the

fact that he seems more than capable of managing her fibromyalgia, we will not plan to schedule her for a follow-up in the near future but instead defer her management to him at this point in time.

(R. 250) (emphasis added).  While the Commissioner is correct that "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability," *Sheldon v. Astrue*, 268 Fed. App'x 871, 872 (11th Cir. 2008) (citation omitted), poverty also excuses noncompliance with and the failure to seek treatment*, see Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).  Here, Dr. Saway made it clear that despite Crow's "significant difficulty," he left her management to Dr. Bowling because of Crow's "economic circumstances," "the distance she ha[d] to travel," and Dr. Bowling's level of care.  (R. 250).  Based on this record, contrary to the ALJ's finding, Dr. Saway's deferral to Dr. Bowling is not a proper basis to discredit Crow's alleged symptoms.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Crow did not meet the pain standard is not supported by substantial evidence. Therefore, the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further proceedings.  A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 28th day of July 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE